I would like to begin by discussing three issues regarding Clark's self-representation at his penalty retrial. First, despite being on notice of a wealth of information, raising a bona fide doubt about Clark's competence to waive counsel, the trial court allowed Clark to waive counsel without holding a competency hearing. Second, the evidence presented post-conviction shows that Clark was, in fact, incompetent to waive counsel. Third, the evidence also shows that Clark's waiver was not voluntary, intelligent, and knowing as required by law. Now, with respect to the first claim, the procedural incompetence claim, at the time Clark asked to waive counsel, the evidence before the trial court was more than sufficient to raise a reasonable doubt of his competence. I have a question that you start out with. What is the standard that we are applying? What did the trial judge at that point was looking for? What is the trigger for the trial judge to have sua sponte in this case? The rule is that a trial court has a duty sua sponte to order a competency hearing when the information before the judge is sufficient to raise a bona fide doubt of defendant's competence in the mind of a reasonable judge. All right. Is that the same standard as competency to stand trial? Competency to waive counsel is the same standard as competency to stand trial as the Supreme Court held in Godinez in 1993. So, just to put this in framework, he has gone through a trial where he was represented, correct? Correct. And the judge had the opportunity and had all to see him through that entire proceeding interaction with counsel and the like. There was no question in that case whether he was competent to stand trial, correct? Not raised then and not raised now. Well, I guess in a sense we're challenging competence to stand trial in the sense that it's the same standard as competence to waive counsel. You are claiming that. You are. That's the point. Nobody raised it. Nobody's argued that he wasn't competent to stand trial. That's not an issue that's before us, but so, other than that's the facts. And so the judge now at the penalty phase is being, we're adjudicating whether the judge took an action that is the same standard that was under Tate v. Robinson, his obligation during the entire set of proceedings up to that point. So I'm just, I'm going to let you go ahead, but I'm trying to understand how that all fits in and how it is that when he gets to the point of deciding to self-represent with the standard being the same as competency to stand trial, how we weigh all that. Right. I understand what the Court's saying. My response to that is the defense counsel never raised competency to stand to, he never examined Mr. Clark's competency to stand trial. But Tate v. Robinson put that obligation as we are doing here on the trial page. Correct. They didn't argue, they didn't ask for competency hearing on self-representation either. That's right. I guess my point is the information before the trial court at the time of the waiver would have raised a reasonable doubt, and that information includes the crime itself which was inextricably related to Clark's mental health history. There was evidence at the prior trials of Clark's previous psychiatric hospitalizations for a month in 1966 and again in 1967. There was testimony by defense expert Dr. Sharma that Clark was suffering an extreme emotional disturbance at the time of the crime. There was testimony by a prosecution expert, Dr. Hatcher, that Clark fit in a category of people that operated between neurosis and psychosis. And there were the two letters that the judge didn't look at in advance of his ruling but looked at during the same hearing in which he basically guaranteed a retrial in the penalty phase, those two goading letters he wrote from prison. That's correct. And that is a significant fact and it shows that something, it's very striking. There's a change here. Something is going on with these letters. Let me ask you this and as a follow-up to Judge Fisher's question. I've been puzzling over the Supreme Court's Gladina's case in which the court instructs us that it is the same standard of competence, both competence to stand trial and competence to waive counsel. But while it's the same standard, it's not the same question. The question is not whether he was competent to stand trial. The question is whether he was competent to make a very specific and single decision. Was he competent to waive counsel? And the fact that he may have been competent to stand trial in the sense of could have assisted the trial doesn't mean he was necessarily competent to make that particular decision. I understand the court's concern and I'm not sure I have anything enlightening to say about that. When the Supreme Court in Gladina's held that the standards were the same, then necessarily when you try to interpret those standards, a lot of the cases you're going to look at are competency to stand trial cases because they flesh out what competency means. But it's not the same question. That is to say, he may well be able to be competent to stand trial in the sense of assist, but he might, this is not he does, but merely saying that he is competent to stand trial is not necessarily also to say that he's competent to make the decision to waive. That's correct. I would agree with that. And there's a, you know, the standard talks about rational understanding of the proceedings against him. And we had mentioned in our brief the Lafferty v. Cook case, which is a competency to stand trial case, but it explains that under that standard, the standard mandates the conclusion that the defendant lacks the requisite rational understanding if his mental condition precludes him from perceiving accurately, interpreting, and or responding appropriately to the world around him. So I'd just like to emphasize that. Getting back to the other evidence before the trial court at the time of the waiver, there's also a report by another defense expert, Dr. Stahlberg, that was before the court in which he said that Clark was significantly disordered, emotionally unstable, and it mentioned that back in the mid-'60s he'd been receiving 13 different medications. There's also the tape of Mr. Clark's statement to the police right after the crime, which recounts his instability leading up to the crime and events such as his aborted move to Atlanta to take a promotion, which he returned to L.A. only within a week because he couldn't survive without his therapist. In that same, he talks about not being able to function, wishing he were dead, waking up in the middle of the night screaming, and that he was out of touch. Now, despite all this evidence, the trial court granted Mr. Clark's waiver request, holding only a colloquy that lasts about six pages. And because the confidence requirement continues throughout trial, the court was required to keep considering the question, revisit it, after accepting the waiver. And the court's already mentioned the letters, which were certainly trying to go to retrial. And Mr. Clark testified about that, saying that he wrote the letters for the sole purpose of trying to ensure to the best of his ability that there would be a retrial. But his own lawyer said he's not just trying to do it to get himself killed. His own lawyer said, having been with him all through trial, knowing all of these facts, he said to the judge, I think he's perfectly able to waive. What weight, then, does the judge give to that? Well, that's correct. And the judge, because, as the court mentioned, the trial lawyer did not object and relay this information that he himself believes that has come out post-conviction that Mr. Clark was doing this to basically commit suicide. When we examine the procedural confidence claim, I don't think we're allowed to look at that, but when we look at the substantive claim, I think that really goes to show Mr. Clark's incompetence, what his trial lawyer felt he was doing by waiving counsel and not challenging Ms. Goronski's treatment at the subsequent retrial. Is it your position that it is, by definition, incompetence if a defendant decides that he wants to accept responsibility and proceeds to go ahead even though he knows it's, in effect, suicidal? No, not in each and every case. That could be a competent decision. But it is a red flag when a defendant seeks the death penalty, and this Court recognized that in the Deere case, which, again, is a substantive competency case, not procedural. But the situation there was that the defendant asked for the death penalty and, on habeas, the petitioner presented evidence that this was a compulsion of his, and he wanted nobody to get in his way to, in effect, have a suicide by trial. And this Court remanded to the District Court for hearing on his competency. If there had been the hearing, what is it you're suggesting would have come out that was different from or in addition to what the trial judge had before him in any event? The medical evidence that you're suggesting says he has personality disorders. I mean, that's almost sort of self-evident from the nature of the crime, as you argue. But is it to the level? Is there anything to the level in this record that's even before us now to suggest he wasn't competent to waive? Yes. I think in addition to all the evidence that was before the Court then, the additional evidence that's been presented in habeas, some of which we've already discussed, goes to competence. The trial lawyer's conclusion that Mr. Clark was, in fact, doing this, seeking a waiver for the purpose of committing suicide. The trial lawyer told him there was an excellent... But what if he was? What if that's, in fact... That's why I was asking before. Are you saying that if someone decides to commit suicide, judicial suicide, that that's by definition incompetence to waive? Not by definition, but... But reversed summarily by the Supreme Court a few years ago on just that kind of argument where the Supreme Court struck down Judge Reinhart in my granting of a stay of execution out of Arizona where the Arizona prisoner gave up his right of appeal. And we thought that there should have been a competency hearing and we were summarily reversed by the Supreme Court. Well, the additional evidence here that I think shows that he was incompetent and is supported by the case law is in addition to the defense lawyer's deposition testimony as we have the evidence of the prison rapes and prison conditions. And this isn't just something we hear about after the fact. Mr. Clark's contemporaneous letters to his counsel right before the time of the waiver talks about how he cannot cope, he's desperate, he cannot stand the situation and needs to, as a matter of his survival, get out of that environment as quickly as possible. Well, assuming the conditions are really horrendous in the L.A. County Jail, and they are, would that mean that every single prisoner in the L.A. County Jail would have a right to a competency hearing having experienced the horrors of the L.A. County Jail? Right. Well, what's significant here is not just the conditions, but Mr. Clark's pre-existing psychiatric disorders and how they interact to result in a situation where... Combinations. Correct. And Dr. Jackman spoke about that in his declaration and his deposition of Clark's mental health habeas expert. It's really the interaction, too, and that's what makes the situation so significant here. It's not just the conditions. It's his problems, his psychiatric problems and how they interact. It results both in incompetence and an involuntary waiver. And... And that is part of the inquiries. It's both under Medina's. You're looking at, as you indicated, how to seek a waive and knowing an intelligent waiver. That's correct. Each is required, each is necessary but not sufficient in and of itself to allow somebody to waive counsel. Yeah. I misspoke. I said incompetently. I meant waiver as well. Well, I wasn't suggesting you misspoke. I was just reminding myself. Now, again, with this standard, there are a couple cases I'd like to discuss that really illustrate the problem here. And one of the cases is actually Drove, the leading Supreme Court case. There, the defendant was charged with raping his wife, which is one of the charges against Clark. And... The Supreme Court... There was evidence the wife testified before trial, right? Before the trial began that the defendant had attacked her. And the Supreme Court held that the failure to hold a competency hearing there was error. And the Supreme Court stated, for a man whose faith depended in large measure on the indulgence of his wife who had hesitated about pressing the prosecution, this hardly could be regarded as rational behavior. I think that really shows what's going on with the letters here and how that triggered a duty to hold a competency hearing. What am I to make of, if anything, the fact that the letters were not introduced by Mr. English at this hearing? They were rather... No, I'll say it this way. It was the prosecutor who particularly urged the judge to read the letters. Now, the prosecutor was urging him to read the letters for a slightly different purpose, at least as I read that somewhat ambiguous colloquy. That is to say, he wanted him to read the letters so that he could put some sort of a control on the letters that could be sent out of prison and so on. But I'm trying to tie this into Judge Nelson's question. We have here his lawyer basically not objecting to Mr. Clark trying to represent himself at the second penalty phase. What if, and I only say what if, I'm not sure that this was what was going on. And so this is hypothetical at this point. What if Mr. English was at this point thinking at least a possible outcome of his being allowed to represent himself would be a good appeal or habeas issue and he's willing to let it go forward on that basis? Is this invited error? Or does it show up in a different sense? Does invited error work differently when in fact it's Clark himself who's trying to do it and his lawyer's stepping back and letting it happen? Yes. I don't think it could be invited error because in the competency cases discussed the trial lawyer also has a duty to the court if he feels the defendant is incompetent to relay that information to the court. Now the deposition testimony here shows that Mr. English did not believe in his mind that he did have a duty even though he concluded that Mr. Clark was waiting counsel to basically commit suicide. I think that the fact that the court is mentioning really goes to our ineffective assistance claim because the trial lawyer was on knowledge of so much information that this was an incompetent decision that was being made and didn't bring that to the court's attention. And the case is made clear that the courts really rely on the trial lawyer to do that. And the court has accurately phrased it. He says in his deposition I did not believe Mr. Clark was incompetent and then basically in that sentence I also thought it was a damn good appellate issue. I don't wish to hurry you on if you're still wanting to talk about this but at some point I want to talk about the green issue. Yes. I'd like to just spend a brief amount of time on moral incompetence and I'll move on to the green. Take as much time as you think you need to. Thank you. On the substantive incompetence claim on which we requested a COA I'd just like to point out a couple more facts that I think establish the claim. We've discussed the letters and the coerced of jail conditions. Dr. Jackman's declaration also discusses Clark's mental health history back in the mid-60s and that he received the diagnosis of schizophrenic reaction acute who was given a lot of antipsychotic medications and also in 1967 received the diagnosis of simple schizophrenia which caused psychotic episodes. And Dr. Goronsky's notes also revealed that she noted Clark had feelings of disassociation and that she was concerned about his disassociated state. Let me ask you about another letter that Mr. Clark wrote to Mr. English inviting him on how to pursue the case outlining a good process for defense. Doesn't that show that he is thinking at least for those moments rationally and I would leave Mr. English to believe that he's perfectly competent? There are... There are letters, determined general submitted letters where it seems like Mr. Clark is engaged in the proceedings but I think that goes to show what's exactly happening at the time of the waiver which is the relevant time and how the letters to Goronsky really show that something significant has happened here. I mean, this is... In most cases when the defendant exercises his Faretto right it's after he's tried to replace counsel or there's been disputes with counsel that are on record and everybody knows about it. And what's striking about this case and going back to what the trial judge had before him is that this seems to come completely out of left field that this Faretto request. And so it's really striking in the courts on knowledge of Clark's mental health history the crime and so whatever the prior letters may show I think we're looking at this point in time when you look at the letters from Clark to Mr. English describing his desperation to get out of jail it shows something really different is happening here. Well, the issue in front of us has to be what did the trial judge know and did the trial judge have a sua sponte obligation to inquire further including to have a hearing? That is correct. Now, we're beginning to talk about a fair amount of evidence that was not in front of the trial judge is to say we're beginning to talk about correspondence between Mr. Clark and his lawyer and so on that the judge didn't have and some of that evidence cuts in favor of he should have had a competency hearing and some of the evidence cuts against it but the judge didn't have any of that in front of him so what do I am I supposed to pay attention to that in terms of deciding what the judge's duty was? No. The court is correct and I apologize if I indiscretly am and so I'm confusing the issues we need to be very clear and I was trying to be clear of what evidence was before the trial court and put that to one side and examine that on the procedural incompetence claim and then I guess what I was falling into was our second claim of substance abuse The COA that was so far denied Correct. I'm sorry. I did not make that clear For the purpose of my question Yes Right and all that was underneath the surface so to speak so the trial judge didn't have the benefit of that I'm slow catching up to where we were I'm now with you No. I was not being clear To the extent that the request came out of left field that was self-evident to the judge Yes Just one more case I'd like to mention I'm not sure how clear it came out in the briefing It's a 9th Circuit case Smith v. McCormick which remanded for a hearing on a claim of ineffective assistance of counsel for failing to seek a competency exam where the defendant pled guilty and asked for the death penalty The defendant there later moved for reconsideration saying he had pled guilty because he was deeply depressed because of the prison conditions he'd been in solitary confinement The motion for reconsider was reconsideration was denied and the 9th Circuit remanded for a hearing So I think that goes to the idea of somebody seeking the death penalty and whether that can be a competent decision It depends on the situation The situation in Deer and Smith is very much like here with the prison conditions having an effect The Court has mentioned an interest in discussing the instruction claim and I wanted to try to make one quick point There was a lot of briefing on that and I don't mean to repeat it but I really want to focus on harmless error The California Supreme Court held that the green instruction was required under the prosecution's theory of the case and the California Supreme Court stated that the jury agreed with the prosecution's theory of the  and that was the error verdict for Ava Garonski and Sarah Garonski Now I guess my simple point is how can the error be harmless when the Court is saying the jury relied on the argument where the error occurred in order to make Mr. Clark death eligible In other words the jury relied on the illegal theory to make him death eligible and the California Supreme Court says well it's harmless because there was other evidence that didn't require green instruction There was other evidence that was put in by the defendant on the green theory Correct Red Kraken sort of a catch 22 Correct In fact I'm with you so far what do I do with the Supreme Court's holding that the green instruction was not required on the plaintiff's theory of the case and as I read the California Supreme Court and its reliance on Robertson or Robinson I can't remember I believe it's Robertson case to indicate that green has been redefined I see absolutely no redefinition in Robertson of green and indeed Robertson quotes the relevant language of green Green says that if the crime was intended among other things to quote facilitate the murder that doesn't make it death eligible Correct Is Green excuse me is Clark a reinterpretation of green on that point That's how I read it That's how I read it too Your Honor It's not until the Clark appellate decision that we learned that that's what the green rule now means and we've made our arguments on the implications of that as far as experts etc And if that's true then in a sense we don't even get to the Supreme Court's harmless error analysis because the Supreme Court says well the jury could have believed the defendant's story and if they could have believed the defendant's story the green instruction didn't apply but you've just argued and I'm inclined to believe this until we get to Clark the green instruction and       we get to  the green instruction and I'm inclined  believe this instruction    to  this instruction and I'm озд inclined to believe this instruction and I'm inclined to believe this instruction He's heard all this and therefore is necessarily voluntary and intelligent. That's not necessarily true because, and this is not the facts, but if someone had said to him, I'm going to kill your wife and your daughter and all of the people you love, unless you agree to do this, the judge doesn't know this. The judge tells him all these things and he says, sure, I'm happy to represent myself. Of course it's not voluntary. I would agree that if somebody held a gun to someone's head or figuratively or in the way that you described is forcing and compelling him, then it's not voluntary. So we can't simply read that quote colloquially and decide that it's necessarily voluntary. But when the cause and effect that's alleged here becomes more attenuated, here's no allegation that somebody forced him to give up his right to counsel, that anybody made any threats, quid pro quo, whatever, to force him or pressure him to give up his right to counsel. Instead, there's an allegation that some things happen in county jail, and those are still merely allegations at this point. Well, there's the argument that he's got an internal compulsion and so on. These are very different arguments from the easily understandable, I'm threatening your loved ones. I chose mine to make it clean. This case obviously is much more ambiguous. And I know of no authority that says we look into the motivations, other than motivations such as you're talking about, immediate threats, but that we look into somebody's motivations, somebody's emotional reasons, etc. And if we start looking into those things, we risk violating FRERETA and taking away that autonomy right that FRERETA is there to guarantee. And that right is, assuming that somebody is competent under the GODENA standard, you have an absolute right, once you're accused of a crime, to control, if you need to, the litigation that's going to decide your fate in your life, to act as counsel. And we won't lightly take that away just because we suspect that your reasons for doing so might be rash, impulsive, etc., not very wise. In fact, almost every FRERETA waiver is unwise. We risk treading very deeply on FRERETA if we were to go that route of second-guessing his voluntary and intelligent waiver based on allegations of that sort. There are a few more points I wanted to make about the competence, and this panel had more questions about it. Judge Fletcher, you pointed out that there might be an issue here in your mind as to whether, even if he's competent under GODENA's to stand trial, if he is competent to make this one particular decision, which is to dispense with counsel. The way I read GODENA's in holding, affirmatively, that the same standard of competence to stand trial is the standard of competence to represent myself. Competence to stand trial necessarily involves competence to make all of the decisions that a criminal defendant, even when represented, sometimes has to make. And when we start expanding beyond GODENA's and saying, this particular decision requires a different degree of competence or a different degree of understanding, then... But I'm not... This is a hard one, and I struggle with understanding GODENA's. But if it's not only the same standard, which GODENA's tells us it is, but also the same question, then you never have to decide whether someone is competent to waive counsel if you have decided that he is competent to stand trial. Well, correct, but that is a big thing. You decided that he's competent to stand trial. But competency to stand trial is, is he rationally capable of understanding the proceedings? Can he assist counsel? Is his mind working at that level? Now, there may be various things during trial that he can have trouble with. But the overall judgment is he's competent to do these things. But what if we have only a single question? Not, can you help your lawyer through the course of the trial? But a single question, and that is, is he competent to make the decision to decide to represent himself? Unless that is a distinct question from which the answer is not necessarily the same answer as, is he competent to stand trial? Then I never have, I not only have the same standard, I never get to ask the separate question because the only question I ever ask is, is he competent to stand trial? Well, the way I would read GODENA's then, and I appreciate struggling with all these cases, but the way I read GODENA's is that this is an indication by the Supreme Court that anybody who meets that standard of competence to stand trial, the rational understanding, et cetera, we want to give them the absolute right to represent themselves under FRERETA, provided that it's timely, et cetera, the other requirements of FRERETA. We don't want an additional inquiry is the way I read GODENA's. If you're competent under that standard, we want to give you that right to represent yourself. Well, but GODENA's was rejecting a stricter standard. It was scaling back and saying, no, there's going to be a greater burden. So I think that's part of the GODENA's context. And to Judge Fletcher's point and your point, it seems to me that, yes, competency to stand trial is the standard, but it is a different aspect of it. And in that sense, you have to take whatever standards you apply when judging whether someone's competent to stand trial, but you have to apply it to the question. And the question is, am I now competent not only to stand trial, but competent to represent myself? It's the same degree of, you know, the same factors go into the evaluation, but I would resist the notion, and I certainly wasn't suggesting it by my questioning earlier, that it is foreshadowed or foreordained, I should say, that if you've been competent to stand trial, you automatically are competent to then self-represent. That's a big difference. But in terms of what the judge looks at, it seems to me the judge can, and I may be wrong on this, but at least the judge can consider the fact that all throughout the proceeding, and this was a long proceeding, that there was nothing that was suggested by anybody. And, as I was saying, even in this case, it wasn't suggested. He wasn't competent to stand trial. So it may be evidentiary, but it's not conclusive. And I believe that the record would show that clearly he had a rational understanding of what he was specifically doing in waiving counsel, that he had a right to an attorney, that henceforth he would be representing himself, he would be doing things that an attorney needs to do, he would get no additional privileges because he's pro per, et cetera. Let me just ask you a question. Is denial of a competency sharing subject to harm of error analysis? Yes, I believe so. And I would make that argument based on, I believe it's the Odell case from the Ninth Circuit that held, and I apologize if I don't have this exactly, but I believe in that case there is authority that you can look and see if you can reconstruct competence at this moment based on the evidence that we have, even though you didn't get the hearing at the time. And if I'm misstating the Odell rule, I'd apologize, but otherwise I know of no authority that says that the standard breadth, the breadth standard shouldn't apply to any particular habeas claim other than one that would constitute a structural error. And in this case, we have evidence that, which as Judge Fletcher pointed out, were not before the trial judge, but are before us now. The numerous letters that he wrote to his trial counsel analyzing the way the case should be handled, et cetera. We also have evidence that was before the trial judge. The transcripts or the actually seeing him live in court through nine days of trial testimony at the first trial and his demeanor in the courtroom. So for this purpose, I don't mean to disrupt your line of argument, but for this purpose as in terms of before the court, do you include as before the court the two letters that the judge saw at the end of that hearing, the so-called goading letters? Yes. Even though it was after, again, he could have revisited his decision. So yes, I include those. And those two letters, despicable as they may be, actually demonstrate his competence under the Godinez standard. He's arguably manipulating the system, but he understands that system that he's manipulating, and he refers in those letters to the status of the case. The fact that there was a hung jury the last time, that he attributed it to incompetence of the prosecutor, that the decision now that's going to be made is whether to retry him, but don't worry, he doesn't believe that that's going to happen. And if he does, the prosecutor won't win, and he knows that the consequence is that he would get a reduction to life without parole, be on the main line of the prison instead of death row. He understands that, and that's stated. There's never been any question about what he's smart. Is he smart in trial? Is he smart writing those letters? Certainly very intelligent. That's not necessarily the question that we're addressing. But more specifically, he's not just very smart. He understands what the trial is about, what's going on in that courtroom. And I think that ties in more to the question of procedural and substantive incompetence. Also, because the panel was interested in what actually to make of all of those letters, how they're relevant to anything that's within the certificate of appealability. They're certainly relevant to the ineffective assistance of counsel claim, because these things were known to the trial lawyers at the time that they didn't do what Clark says they should have done in terms of raising this competence challenge. And that was demonstrated to the trial attorneys that they knew that their client was certainly competent, no question, under the controlling legal standards. And unless the panel has any further questions on the competence issue, I'd like to address the instruction on the arts and special circumstances. From my standpoint, speaking only for myself, I have puzzled through the evolution from Green to Clark and its submission. So I'm trying to find out what the legal theory is to either grant or avoid granting relief in this case, to be quite candid. I have to say, in reading Green and its articulation, careful articulation, of what the arts and special circumstance was, drawing specifically on the Supreme Court decisions to limit juror discretion, and then jumping ahead to Clark, where, as a judge who I think has a reasonable understanding of the criminal process, I'm having a little trouble understanding how the juror instruction, or the arson, felony, murder rule, special circumstance rule, would be clear at all, and limiting at all to a jury, if properly instructed. What they did get was the first paragraph of the instruction, which seems rather open-ended. And so then the Supreme Court says, well, yes, it has to be limited, but then it's limited in order to enhance or clarify the prosecution's theory. And it wasn't the prosecution's theory, as I understood the case, the way it was even argued. So if you can help clarify the dilemma there, I'd appreciate it. I think the key to all of that is understanding the genesis of what's been called the Green rule. And Green was an interesting case in that, I don't know, I'm sure the panel is familiar with the facts, but the defendant murdered his wife for reasons that had nothing to do with robbery or larceny, but in the process of murdering her, stole all of her clothing and belongings and destroyed them. He didn't want them. He just wanted to destroy them, and the reason he did that was simply to cover up the crime. The State Supreme Court in Green was concerned with the Eighth Amendment narrowing function, and that is the reason for the Green rule. They stated this, yes, is robbery. There was a challenge to the sufficiency of the evidence of just robbery, and they begrudgingly said, yes, technically, you used force, you took something, it's robbery. But only by the most slightest of technicalities is this robbery. There's clearly no driving purpose to steal anything here, and if we were to interpret the robbery special circumstance, and it's significant that it's not an earthen special circumstance, to include this and to bootstrap this barely a robbery into capital murder, we wouldn't be performing the narrowing function that the legislature evidently intended when they enacted that special circumstance. But that whole theory is repeated in Robertson, too. Yes. Interestingly enough, there were only two cases on the Green rule before the crime took place in this case, Green and Thompson. Both of those were robberies. Thompson, again, there was just a very incidental taking. I believe it was a set of car keys, and he was only trying to make things seem to the victims like they were being robbed when they weren't, and just immediately discarded the car keys after killing them. In all of those, what the Green held is that when somebody happens to engage in ancillary conduct that technically constitutes robbery, we don't think that we don't want the special circumstance to apply for Eighth Amendment narrowing reasons. The only case that happened, the only other Green case that happened between the crime being committed here and the trial was the Robertson case. And there, interestingly enough, we have the beginnings of a concurrent objectives idea. The defendant raped the two victims, murdered them, and also stole their panties. And I started to refer to this as the quote-unquote underwear case, just to remember this as a shorthand. But he had a collection of women's underwear in his room, and there is a finding that apart from his desire to kill the victims, apart from his desire to rape the victims, he also had a very separate and independent intent to obtain the panties for whatever prurient reasons that he had. In fact, I'll read to you, and I think I'm consistent with your description of the case. This is simply the California Supreme Court in Robertson. Unlike Ian Green, I'm now reading from the opinion, such an intent to steal was entirely independent of the murders and was not planned simply as a means of concealing the killings. This is entirely independent. Yes. Whereas in Green, we're told if it's designed to facilitate the crime, then it's not a special circumstance. We have in all of these cases a murder that is, or a robbery that is committed to facilitate, or merely to facilitate the murder. And what we don't have in Green is an absolute rule stating that in any felony, if you merely commit this, excuse me, that the murder absolutely must be perpetrated for the sole purpose of facilitating the commission of the other felony. We have a ruling that the reverse, the converse, is not going to be sufficient. It talks about, even in its examples, the primary purpose is murder. Excuse me, the primary purpose is the other felony, and then the murder comes along, a burglary, a rape, whatever is the primary purpose, and then the murder occurs as an add-on to it. That's what Green was saying didn't happen in that case. Right. And in Green, it was the theft which was the add-on. And I think the real intent of Green and the whole evolution of this rule is to avoid these add-on ancillary felonies. But the way the rule is articulated doesn't have a temporal sequence. That is to say, the robbery could have taken place beforehand, as indeed I think it did in Robertson. That is to say, he took the clothing away beforehand, but it was not a robbery that preconceived a special circumstance, or it was because it was independent. What I'm after here is the Green language that says, and I'm just reading from Green, the legislature's goal is not achieved when the defendant's intent is not to steal but to kill and the robbery is merely incidental to the murder because its sole object is to facilitate or conceal. Now, if only the word conceal were used, I might be inclined to say, okay, well, I can stay pretty close to the facts of Green. But the rule as articulated here is to facilitate or conceal. And then when we get to Robertson, the Robertson language is intent to steal was entirely independent. It doesn't say independent, it emphasizes entirely independent. So I can't read out of Green the word facilitate. Well, first of all, one has to interpret the word facilitate and how attenuated facilitate can mean. Facilitate meaning I'm only stealing to cover up a crime, or facilitate in that I am setting fires, which I don't intend to kill anybody in order to drive the occupants out of the house, which, by the way, then he wants to do a number of things. He wants to humiliate Eva Goronsky and inflict the greatest amount of emotional distress he possibly can in his calculations and kill David. But also, in that leap of language that you're discussing between Green and Thompson and Robertson, the word intent to steal is there, and that's significant, in that every case in those early days of the Green rule was a robbery, and robbery is a unique crime. Perhaps kidnapping would fall in this category, too. But robbery, in virtually every murder, the perpetrator wants to cover up his crime in some way and wants to evade capture. And when doing so just happens to involve removing something from the victim, technically you've got a robbery. And robbery, you have to then be especially careful that a robbery is not going to be something that's merely ancillary, merely technical. And keeping in mind, I believe that what the Supreme Court did in Clark is consistent with the whole purpose of the Green rule from the beginning, is that we're not talking about these technicalities. We're talking about somebody who has, where the arson is central to his whole design here. I'm with you so far. Okay. But where that takes us is to Clark, where the Supreme Court says, under Green, it is a Green defense. If he set the fire in the dining room in order to kill them. The reason the Supreme Court, the reason it might not be a Green defense, says the Supreme Court, is that he set the fire in order to drive them out of the house in order to kill them. But the court itself tells us that Green does apply if he sets the fire to kill them. The only difference the Supreme Court is telling us is that, well, it took one more step, and he wanted to drive them out of the house, and that one doesn't get a Green. Well, to be a little bit, that's basically true except to be a little bit more precise. If it was to set the fire for the purposes of killing all the occupants, there would then be a jury question, and that the jury could still find concurrent independent objectives, theoretically, in setting a fire. If the fire were set, theoretically, if the fire were set for the purpose of killing the occupants and for another independent purpose. So what the Supreme Court held was that if, under that theory, that he set the fire to kill all of the occupants, you would have a triable issue on it. What do you mean a triable issue? As I understand what the Supreme Court said in Clark was, if he set the fire in order to kill all the occupants, that is not a special circumstance. And for that purpose alone. Well, and I think they're telling us that on the prosecution's description of the case, that qualifies under their view of what for that purpose alone means. I mean, he's not trying to get insurance on the house. He's just trying to kill them. Exactly. So you read Clark saying that if I decide to commit murder by fire, by arson, that's not a special circumstance. And if I have no other reason. I mean, these are not the facts, and I'm only mentioning them hypothetically. But suppose that he decided he wanted to leave Ava Goronsky destitute. He wanted her to survive the fire, but her house to be completely destroyed. And that, in addition to killing David by fire. I don't think the Supreme Court would have ruled out something like that, and I'll grant you that those weren't the facts of this case. But in this particular case, the facts were that Mr. Clark decided he wanted to kill David Goronsky. He had that plan for a long time. There were several possible ways to kill him. There are a lot easier ways to kill him than killing him by arson by setting his house on fire. But he calculated, I don't want to just kill him. I want to do something really bad to Ava Goronsky. That's what he said. Yes. The prosecutor said, well, no, that's not what happened. The prosecutor said, well, yeah, he wanted to kill all of them. But the jury necessarily, and this is something I want to address because I think there might be some confusion on this. But the jury necessarily found it to be the way Mr. Clark testified. And the reason we know that is the second-degree attempted murder verdicts. Had the jury believed that his intent in going there, making all those plans, getting the gasoline and setting the fires in those back rooms was to trap everyone inside from the start and burn them all to death, it would have to have found first-degree attempted murder on the other accounts for the other two occupants of the house. There would be no other way under the instructions that they were given, the first-degree murder and the first-degree attempted murder instructions. When they found that it was... I have to say I've got two problems with that. Number one, inferring from attempted second-degree murder what the jury must have thought is always difficult because there are various compromises and so on. Second, we know, as Judge Nelson and I particularly know from an earlier case we were involved in, California later decided that the very concept of second-degree murder was incoherent and that the only possible kind of attempted murder you could have is attempted first-degree murder. And I know you're familiar with that line of California cases, but there is no such thing any longer as attempted second-degree murder in California because of its intellectual incoherence. What we have in California now is a new statutory construction. It wasn't existing at that time. But right now when you find a defendant guilty of attempted murder, the prosecution can allege and the jury can find or not find an additional allegation that it was premeditated, willful, and deliberate. If they find that finding is true, then there is one range of sentences. If they don't make a finding or if the prosecution never alleges that finding, then there's a different smaller range of sentences. That's what we have now instead of first-degree and second-degree attempted murder. But you're familiar with the line of cases in which the California Supreme Court decided that there was no such thing under California law as attempted second-degree murder. I'm not familiar that it said that. What I'm familiar with, though, however, is that California law says you cannot have attempted murder based on implied malice. Attempted murder has to be specific intent to kill. Completed murder can be implied malice. Wait a minute. Before we get too far off the reservation here, I want to make sure you and the California Supreme Court are saying the same thing. By any standard, the error was harmless. We recognize that the jury verdicts finding the defendant guilty of the attempted second-degree murder of Ava Garansky and Sarah confirmed that the jury believed that the defendant ignited the gasoline vapor with the intent thereby to kill the family members in the ensuing fire. Yes. And I have it right in front of me, too. So that doesn't – that would support a first degree. No, because it doesn't say premeditation, and this is important. Intent to kill doesn't always mean premeditation. You can have intent to kill and second-degree murder. And this is significant because what the defendant testified was his plan was to set the fires to drive the occupants out. Once he threw the gasoline – That's not what the Supreme Court went on to say. It didn't say, well, that's consistent with lack of intent to – or premeditation. It goes off to say, based on Clark's own testimony, it's harmless because there was this other evidence that he put in to say that it was an – it was ancillary. He was doing it to drive them out. Right. It doesn't adopt your theory. Well, if you read the paragraph at the whole, it first talks about how the prosecution argued and the jury believed. Now, that jury believed, by the way, refers only to that there was an intent to kill the other occupants. Now, how quickly that was arrived by, whether that was premeditated or simply a last-minute thing, either way would be supported by that sentence. But when you read the whole thing at that – later in the paragraph, at that time, his purpose was not to kill David Garonsky. His belated realization that the Garonsky bedroom was occupied, and that's before he threw the flare in, and his resolution to proceed with his plan, nonetheless, does not negate the evidence that he had a purpose independent of causing the death of David. Now, what I read that to say is that the fact that he may have had an intent first to drive the occupants out when he started the act that constituted the arson, but before he realized, things are not going the way I planned. They are not going to run out. This is their bedroom. If I throw this flare in, they're going to be burned, and they're alive, and no one's going to run out. But nevertheless, I must continue with my plan, even though I know this is what's going to happen. And he goes ahead and throws the flare in. That would be consistent with second-degree attempted murder, or nowadays, attempted murder without a finding of premeditation and deliberation, and first-degree murder with respect to David Garonsky. And when reading the entire paragraph as a whole, that's what I believe the Supreme Court is saying here. In any event, the history of the Green Rule and the interpretations and whether what the California Supreme Court held here was consistent with the prior rulings wouldn't come into play until, I'm assuming, that the Court is trying to grapple with the Bowie claim, meaning the claim, the Bowie case that says that if the State suddenly and unexpectedly changes the law in an unprecedented manner, that it can violate due process. The Bowie claim is a very, very high threshold for a petitioner to make. And just in the examples of the cases that I gave you in the briefing, there's one more additional case, the Supreme Court case out of Tennessee. And I don't know why the name is escaping me, but I could perhaps give you a 28-J letter. But that was a case where the Tennessee Supreme Court, on a direct appeal of a conviction, threw out a centuries-old common law rule, the year-and-one-day rule, that says that a victim must die within a year and a day of the act constituting the murder in order for it to be a murder. Suddenly threw that out on this one defendant's appeal and found him guilty when his defense had been based on that. And that did not – that was not considered such an unprecedented and indefensible and unexpected change in the law that the defendant was entitled to relief under a Bowie claim. That was – when you say the defendant wasn't entitled to Bowie relief in the judgment of the Tennessee Supreme Court? The U.S. Supreme Court, which had taken it on their – I'm sorry. Okay. The Tennessee Supreme Court is the one that had adopted that new rule. In the current case, there's also some question as to whether Bowie applies simply to making a crime a capital crime versus a non-capital crime. And certainly, even when it does, Bowie refers to your notice, your notice that your conduct is criminal at the time that you commit that conduct. And there can be no question under the evidence here of whether Mr. Clark went to that I mean, I will set the fires in this particular way to drive the occupants out of them and kill them later because that way, under the Green Rule, I won't be subjected to the special circumstance, whereas if I set the fire to have them all die in the house, I would be subjected to the special circumstance. I don't think that's a tenable and plausible argument. He was clearly under notice that what he was doing, especially in the words of the statute that existed at that time, was murder and even capital murder. I would like to check. I see that I'm beyond my time, but I want to check to make sure if there were particular points that I also wanted to make sure. There was a question for the panel about the fact that, and this is going back to the competency claim, that those letters that were written by Mr. Clark to Ava Garansky and her father were offered by the prosecutor, not by the defense at the time of the pro per motion. Just to clarify, the reason for that was just to make sure that Mr. Clark isn't going to abuse his pro se privileges. That was quite clear. That was part of my question. Okay. Okay. And apart from that, if there are any... May I just have you explain one more time why there isn't an ex post facto violation here? Well, technically, I know I used the term ex post facto in my briefs, and I used it unadvisedly. I apologize. Technically, it would be a buoy claim because the ex post facto clause would only apply to acts of the legislature, acts of Congress, rather than a judicially created rule. But still, a lot of the same analysis would apply. And my argument is that looking at the genesis of the Green Rule, which is a very new rule at the time that the crime was committed here and had never been applied beyond the unique circumstances of robbery, which is not to say it doesn't apply to arson, but how it applies to arson exactly is something that hadn't been developed. It was simply an area of law that perhaps had open questions to it, but I don't think that anything at that point gave clear and unmistakable guidance. What do we do with the CalJIT instruction? What's the weight of that? You say it doesn't apply to robbery. The CalJIT instructions, first of all, do not have the weight of law that are devised by the committee, which is trying its best to codify case law. But, again, that instruction was written at a time when the only opinions they had to go by were really robbery cases. They didn't limit it to robbery. Right. But they had no guidance on how to battle it out. Isn't it reasonable to look to that as to what the defense bar or whoever drafts that, clearly the defense bar, but who else is involved in it? That's how they read Greene? Yes, it's the only case, but then — Well, that reading of Greene and even the reading of Greene that's advanced now by my opposing counsel is not an unreasonable reading of Greene as of the time of the crime, but the question under Bowie isn't simply whether the defense theory is unreasonable, it's whether the one that was announced by the Supreme Court was — After the fact. Yes, was unreasonable in a sense, actually was indefensible is one of the words. And the relevant time is when, for measuring? I would argue the relevant time for the Bowie claim is when he committed the crime. Obviously, there's an argument that might be made that the relevant time should be when he wasn't given the instruction. Well, if it's when he did the crime, it's even less helpful for the State because it was even less clear that it wouldn't apply. Well, there was simply not a lot of law on it. Because you cut Robertson out of the analysis. But the law doesn't have to be crystal clear that the Greene rule would be interpreted the way the California Supreme Court decided. It simply can't — it simply has to be within the realm of reason that it could be. And one case that — I'm glad you're asking me this question because it reminds me — one case that is informative on that is People v. Murdichaw, which was decided shortly before he committed the crime. And I know that my opposing counsel's argument is that People v. Murdichaw was not a — A felony murder. Right. It was a capital case. There was a special circumstance. It just wasn't that particular one. But the case — but when deciding the scope of the felony murder rule in Murdichaw, the case that the California Supreme Court analyzed and distinguished was Greene. And that begs the question of wasn't it at least within reason, within the realm of reasonable foreseeability, that Greene could be interpreted in this particular way when, in a case involving the felony murder statute, the California Supreme Court looked to Greene and distinguished it on the grounds that in the case at bar there were concurrent independent objectives. Okay. And unless the case has any further questions, I would submit. Okay. Thank you. Thank you. Thank you very much. Rebuttal? Thank you, Your Honor. Just a few quick points. The attorney general argued that the waiver claim isn't properly before the court. That's not right. This claim was raised in the first state habeas petition at page 22. It appears in the federal habeas petition under claim five, challenging self-representation. I believe page 80 discusses waiver. It's very, very clearly laid out. As we've been discussing in discussing the law, guidance itself requires both competency and a valid waiver. So I think it's always part of that analysis. And in the submission, the attorney general submitted to this court, saying that the waiver claim wasn't properly here, and then submitting some stuff from the district court to show that he had objected to that. If you look at the submission, it was actually only responding to two very small parts of the waiver claim and claiming that they weren't properly raised. One was that the idea that the waiver was involuntary because Clark had to choose between his right to counsel and right to speedy trial. And another was that the colloquy did not tell him enough about the downside of self-representation. Now, as to that part that I just mentioned, that was exhaust, and it's part of the petition, because the petition complains that all the judges of the colloquy would give warnings about the general pitfalls of self-representation and didn't go far enough. So that is all before the court. In the motion to expand the COA, we did discuss waiver. We discussed waiver in bold print headings, and we did so, again, in the opening brief, and at numerous points discussed that the waiver was involuntary. And that's the habeas, Clark's habeas, mental health experts have discussed that. So it's always been part of the case, and I think that argument is not well taken. Kelly also mentioned, stated that he didn't think there's any need to look into the defendant's internal thinking in taking a FRERETA waiver, but we cited a case in our brief, the Christensen Ninth Circuit case, which says that when the court is on notice of a defendant's mental instability, there's a requirement for an even more extensive colloquy. And certainly the trial court here had heard plenty of evidence of Mr. Clark's mental instability and required a more in-depth colloquy. And Von Moltke, one of the key U.S. Supreme Court cases on colloquies, says that you have to have a penetrating and comprehensive analysis, and that didn't happen here. I just wanted to clear up one thing. It's important to remember we talk about confidence to stand trial. There was never a ruling here that Clark was confident to stand trial. I mean, you can look at the evidence before the court one way or the other on how that cuts, but it's important to emphasize there was never a ruling that he was confident to stand trial, and none of the mental health experts were asked to examine that. There was a question about whether denial of a competency hearing is subject to harmless error analysis, and we've been talking about the procedural competency rule primarily here today, whether the reasonable judge would have a sua sponte duty to hold a hearing. And it's not subject to harmless error analysis. That is the error. The error is when the due process rights are violated, when the trial judge had a duty to hold a hearing and didn't. And so harmless error doesn't apply. Now, what the case is. But the remedy for that error is not outright reversal. The remedy for that error is that we hold a hearing now. Correct. There's the question of would a retrospective hearing vindicate the defendant's due process rights. So that's part of the analysis. But I think it's important. A mere failure to hold a hearing does not result in a granting of the writ. It very well could. The case is Drope and Torres v. Prunty, which is a Ninth Circuit case. The failure to hold a hearing did result in the writ being granted with the subject of the State being able to retry him. But the cases do discuss whether a retrospective competency hearing would vindicate his rights. But my only point is I don't think it's right to call that harmless error analysis. It's about what's the appropriate remedy. And those are the remedies that are discussed. There was discussion about the letters to Ms. Goronsky and her father being properly before the court in deciding whether there was a waiver. And I just want to make clear that I think, as I mentioned, because the duty of competency exists throughout the trial, what was also before the court was what happened at the subsequent penalty retrial, what Mr. Clark did. Because the judge was in a position then to reexamine the waiver decision. And I'll just briefly mention a couple of things Clark did there. He stipulates that Ms. Goronsky provided the highest possible counseling, directly contrary to the prior theory of defense. That raises a red flag. He omits seven penalty phase witnesses that provided mitigating evidence of his obsession with Ms. Goronsky and dependence, the trip to Atlanta, the ultimatum when he comes back to his job that he can keep his job only if he gets independent psychiatric counseling. And then also the aggravating evidence that he presents, saying he's, from an ethical view, worthless, that he's a selfish human being and not arguing for life. So the trial court had also before what unfolded afterwards and was in a position then to reexamine waiver. The final thing on green, the Attorney General tries to make sense of what happened. As the Court said, inferring what the jury must have done about the second degree attempted murder convictions and what they must mean. And I think the Court was right to point out that that's not the way the California Supreme Court looked at it, and rightfully so. And the other thing is the fact that the second degree attempted murder came back doesn't mean that the arson still wasn't to facilitate the murder and the primary goal still wasn't murder. When you look at the green analysis, it's still the same. And the evidence was, at least from the defense view, that he set the fire solely to facilitate the murder in the language of green, and the primary goal was murder. So I don't think the discussion about the Attorney General's argument on what the second degree verdicts mean carries water. I would just like to conclude by saying, as regards to confidence, Mr. Clark was allowed to represent himself at his death penalty retrial without there ever being a confidence hearing, whether in trial, in state post-conviction, or in district court. I urge the Court to grant relief in this case or, at a minimum, remand the case to district court for a hearing on confidence. Thank you very much. Thank you very much, Counsel. The Court appreciates the careful and professional attention both sides have given to this case. The case of Clark v. Brown is now submitted for decision, and we are adjourned. Yes, thank you, Counsel, very much. Nice work. Thank you.
judges: Dw Nelson, W. Fletcher, Fisher